Clarence Irvin **TURNER**

v.

**STATE OF MARYLAND.**

Civ. No. 12025.

United States District Court
D. Maryland.

July 3, 1962.

Frederick J. Green, Jr., Baltimore, Md., court-appointed, for petitioner.

Thomas B. Finan, Atty. Gen., of Maryland, and Thomas W. Jamison, III, Asst. Atty. Gen., for respondent.

THOMSEN, Chief Judge.

This habeas corpus case is before the court on remand by the Fourth Circuit to determine whether Turner's representation by his court-appointed counsel in the Criminal Court of Baltimore City on a charge of attempted armed robbery was so inadequate as to violate his rights under the Fourteenth Amendment.

Immediately before Turner was sentenced to five years for the attempted armed robbery, he received consecutive sentences of two and three years respectively on two separate indictments for burglary, to which he had pleaded guilty. The State agrees that Turner is now serving his sentence for attempted armed robbery and that the pending application is not now premature.

*Facts*

During the week immediately preceding February 3, 1958, Turner had participated in two burglaries in Baltimore City. On the morning of February 3 he was riding around the City with four

youths—Harris, Robertson, Schriver and Smith—two of whom had participated in one or both of the burglaries, and all of whom were younger than Turner, who was 23. The car was titled in Turner's name, although he says that some of the others had paid part of its cost. Robertson had a pistol and there was some discussion of robbing a store. Turner said that he did not wish to participate in an armed robbery. However, when Robertson went into a store, armed with the pistol, and Schriver and Smith followed him in a few minutes later, Turner and Harris remained in the car with the engine running, and all drove off when the three returned, after an unsuccessful attempt at armed robbery of the storekeeper Rosen. Sometime thereafter the other boys left Turner at his home, but he was arrested on the street about 8 p. m. and taken to the Northern Police Station. Some of the others involved in the burglaries and the attempted robbery were already there. Eventually all involved in the attempted robbery were arrested except Robertson.

Lt. O'Donnell of the City Police Department took statements from Harris and Schriver on the evening of February 3, a statement from Smith early on the morning of February 4, and a statement from Turner between 11:35 a. m. and 2:20 p. m. the same day. Additional statements were taken from Harris, Schriver and Smith later on February 4, as well as original statements from two youths involved only in the burglaries. Turner's statement covered both the attempted robbery and the burglaries. He admitted participation in the burglaries, and the statement supports the finding that he was a more or less reluctant accessory in the attempted robbery. No claim of coercion is made or justified, but Turner now says he made two statements, not one, and did not say what is recorded in question and answer form in his statement, which he signed on the sixth page and initialed on the others. I find Turner's testimony false on this point, and accept the testimony of Lt. O'Donnell.

On February 5, Turner was taken before a magistrate for a preliminary hearing, was held for the action of the Grand Jury, and was indicted shortly thereafter for the two burglaries and for the attempted armed robbery.

He was arraigned on February 20 before Judge Manley in the Criminal Court of Baltimore City. He indicated that he wished to plead guilty to the burglary charges, but not guilty of the attempted robbery.[1]

His three codefendants in that case had employed counsel, two of whom had had wide experience in criminal cases. The Judge asked Turner if he wished counsel to be appointed for him; he said yes, and the Judge appointed an attorney of ten years practice, who had tried a number of criminal cases, although he did not specialize in that field.

Turner's attorney wrote to him that he expected to visit him in the jail. Shortly after writing the letter the attorney obtained copies of the indictments from the Clerk, and visited the office of the State's Attorney, where he was shown the State's entire file, including the statements taken from all of the boys, and was given a duplicate original of Turner's statement. The attorney then interviewed the police and one or two of the attorneys for the other defendants.

As a result of this investigation, after reading the statements, and noting particularly that Harris, who was represented by an experienced attorney, was much younger than Turner, Turner's lawyer decided that his best strategy was to try to play down Turner's part in the affair, to try to make Turner appear as little involved and of as little importance in the matter as Harris. This decision was influenced by the fact that Harris and the others had no criminal record of any consequence, but that Turner had a prior record of a burglary, eight cases of auto theft and escape from a reformatory.

---

[1] Pleas of not guilty were entered on the docket on February 20 for all defendants in all cases.

The attorney did not visit Turner in the jail nor communicate with him further until the morning of March 6. On that day Turner was brought from the jail to the lock-up in the Baltimore City Courthouse, arriving there about 9:15 a. m. Shortly after 9:30 his attorney came to the lock-up, called the defendant to the door and talked to him for about ten minutes. I accept the attorney's testimony as to what happened rather than that of Turner.

The attorney asked Turner if he had the indictments, in order to be sure that Turner had read them and understood the charges. Having satisfied himself on that score, the attorney handed Turner the copy of the signed statement which Turner had given to Lt. O'Donnell and asked Turner whether or not the statement was true or whether he disputed it in any way. Turner said he did not dispute it and that it was true.

The attorney learned that Turner wished to adhere to his admission of guilt and to plead guilty to the burglary cases, but that he wished to adhere to his plea of not guilty to the robbery case. Without discussing the matter at length with Turner, the attorney told him that he had concluded that it would be better to go ahead that morning before the court without a jury. Turner did not protest or question this decision. He asked no questions about a possible separate trial or any other matter, but acquiesced in his counsel's decision.

Counsel then went up to the courtroom where the defendants were brought sometime after 10:00 o'clock. About eight lawyers were present, representing various defendants in the burglary and attempted robbery cases. Defendants were apparently rearraigned. Turner pleaded guilty in the burglary cases and not guilty in the case of attempted robbery, which went to trial on not guilty pleas by the four defendants who were present in court.

During the trial Turner conferred briefly with his counsel from time to time. The attorney told Turner at the beginning that he would have to play it by ear, and told him both in the lock-up and in the courtroom that it would be inadvisable to put him on the stand because of his record. The attorney adhered to his intention to take advantage of the questions asked by the experienced attorney for Harris, although it is not clear that the attorney explained his strategy at any length, if at all, to Turner.

During the trial Rosen, the storekeeper, admitted he had never seen Harris, and Turner's attorney then had him admit he had never seen Turner. The statements of the various defendants were offered in evidence. I find from the transcript of the record that it was understood between court and counsel for both sides that the statements were admissible only as against the individual defendants, and I find no lack of skill on the part of Turner's attorney in acquiescing in that understanding without formal objection or stipulation, particularly since Turner was being tried before an experienced Judge without a jury.

During the trial the testimony of Harris with respect to Turner's attitude in the automobile was as favorable as could reasonably have been expected, and the attorney wisely let well enough alone.

After the evidence was closed, all of the counsel made oral arguments, which were not transcribed. I find that the attorney for Harris argued before Turner's attorney, and the latter, following his strategy, made a short argument on behalf of Turner more or less adopting what the attorney for Harris had said. After the arguments the Judge took a recess to read the signed statements of Harris and Turner and upon his return to the courtroom made a brief statement, which appears in the transcript, finding all of the defendants guilty. The evidence shows that the State's Attorney then brought to the Court's attention Turner's record and whatever minor records the other defendants may have had.

It does not appear that any of the counsel for any of the defendants made any argument or statement to the Court

in mitigation of punishment, nor does it appear that the defendants were offered an opportunity to say anything, said anything, or asked to say anything. Turner did not suggest to his attorney, nor the attorney to Turner, that anything be said, although Turner had a seventeen year old wife and a young baby, and the attorney had discussed the situation with the wife.

After the sentence Turner asked his attorney to try to have him sent to the Penitentiary rather than the House of Correction so that his family could visit him more readily, and Judge Manley acceded to this request.

Turner's attorney discussed an appeal with him and advised him that he did not have grounds therefor, but did not specifically tell Turner that he had the right to appeal. Turner did not indicate to his attorney that he wished to appeal, nor did he ever make any effort to appeal either within thirty days or within ninety days. I find his testimony to the contrary incredible. The efforts that Turner made to have his sentence reduced or to have the various sentences run concurrently, including letters which he wrote to his attorney, are inconsistent with the idea that he was then attempting to file an appeal. Turner made no complaint about his attorney's services at that time, although after some three months he did include in one of his letters the story to which he testified before this Court, which is different from the statement he gave to Lt. O'Donnell in the Northern Police Station.

### Discussion

 Counsel should consult with his client a sufficient length of time before the trial to enable counsel to learn the facts, interview any witnesses whose testimony might be helpful, consider the wisest course of action, and explain this to the client. Usually the failure to do so until less than half an hour before the time set for the trial would amount to inadequate representation. In the instant case counsel's delay in consulting his client cannot be condoned, but under the exceptional circumstances, it does not amount to such inadequate representation as would violate Turner's rights under the Fourteenth Amendment. His counsel had read the statements taken from Turner and his codefendants, had discussed the matter with the police, the State's Attorney and counsel for some of the other defendants, and had decided upon a plan of defense based thereon, which was confirmed when his client admitted to counsel that the facts set out in his signed statement were true, and that he wished to adhere to his indicated pleas of guilty to the two burglary charges and not guilty to the charge of attempt to rob. It was not necessary to interview any other witnesses—the storekeeper admitted that he had not seen Turner. The election of a court trial rather than a jury trial was not unreasonable; neither was the decision not to seek a severance. There appears to have been no inadequacy of representation during the trial itself; a short argument was indicated by the strategy adopted.

It does not appear from the transcript that an opportunity to say anything in mitigation of sentence was either sought by or offered to Turner or his counsel. The failure on the part of counsel to say anything after the verdict was rendered is surprising, but it appears that more experienced counsel for the other defendants also remained silent. In any event, Turner and his present counsel have agreed that if he is not held to be entitled to a new trial, they do not wish a ruling that he should be re-sentenced.

### Order

The petition for writ of habeas corpus is hereby denied.